IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

VINCENT ANTONUCCI,

                              Plaintiff,

         -v.-
                                        Civil Action No.
                                        9:03-CV-0653 (FJS/DEP)

JOSEPH DAVID, *et al.*,

                         Defendants.

─────────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

VINCENT ANTONUCCI, *Pro Se*

FOR DEFENDANTS:

HON. ELIOT SPITZER              LISA ULLMAN, ESQ.
Attorney General of the State   Asst. Attorney General
 of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

   Plaintiff Vincent Antonucci, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his constitutional rights.  In his complaint, as amended, plaintiff asserts that he was denied certain work assignments as a result of false information contained in records maintained by the New York State Department of Correctional Services ("DOCS") and derived from a presentence report ("PSR") prepared by probation officials at the time of his sentencing.  As relief, Antonucci seeks a mandatory injunction directing the DOCS to conduct an independent investigation regarding his criminal history, and to adjust its records based upon the agency's findings.

Currently pending before the court are cross-motions by the parties for summary judgment.  In their motion defendants seek dismissal of plaintiff's complaint based upon several prior unsuccessful state and federal court challenges to the accuracy of information contained in his PSR, and additionally assert that in any event no constitutional violation results when the DOCS relies upon information obtained from external sources, but alleged to be erroneous, unless the DOCS knows or has reason to know of the error and utilizes the information in a constitutionally significant way.  For his part, plaintiff asserts that summary judgment

should be granted in his favor, there being no triable issues of fact precluding the entry of such relief.

Having reviewed the record in light of the parties' submissions, I find that the various prior, unsuccessful state and federal court challenges to the information contained in his PSR do not provide a basis for rejection of plaintiff's claims in this action, and therefore recommend against dismissal on this ground.  Addressing the merits, I find that while to a limited extent plaintiff has made at least a *prima facie* showing that false information is contained within the relevant DOCS records, relating to whether his 1976 sexual abuse conviction was for a felony rather than a misdemeanor, as he contends, Antonucci has not demonstrated that the false information was or is likely to be relied on to deprive him of any cognizable liberty interest.  Accordingly, I recommend that defendants' motion for summary judgment be granted, and plaintiff's cross motion denied.

I.      BACKGROUND

Plaintiff is a New York State prison inmate entrusted to the custody of the DOCS as a result of a 1986 conviction, based upon a jury verdict, of robbery in the first degree, robbery in the second degree, criminal possession of a weapon in the second degree, and menacing.  *See*

3

*People v. Antonucci,* 150 A.D.2d 588, 543 N.Y.S.2d 269 (2d Dept. 1989).

At the times relevant to his claims, plaintiff was incarcerated at the Greene

Correctional Facility ("Greene"), located in Coxsackie, New York.[1]

Amended Complaint (Dkt. No. 5) §§ 2, 6.

Information regarding DOCS inmates such as the plaintiff,

containing facts which bear upon various aspects of incarceration, is

maintained by computer, and is generally accessible to DOCS personnel

at various facilities, as well as in the agency's central offices.  Dobbs Aff.

(Dkt. No. 27) ¶ 4.  Among the records maintained by the DOCS regarding

its inmates is guidance information utilized to determine appropriate

program placement; such guidance records typically include facts

regarding a prisoner's criminal history, educational background,

indications of drug and alcohol abuse or dependency, and other similar

data that would be useful in determining appropriate placement.[2]  Dobbs

---

[1]     According to DOCS records, plaintiff was incarcerated at Greene from June of 2000 until July, 2003.  David Aff. (Dkt. No. 27) ¶ 10, Exh. A.

[2]     It is unclear from defendants' submissions whether an inmate's guidance files are maintained by computer, and thus accessible at all facilities as well as DOCS headquarters, or instead are maintained only in hard copy at the facility in which the inmate is housed.  *Compare* Dobbs Aff. (Dkt. No. 27) ¶ 4 (indicating that guidance information is included in inmate information maintained by computer and accessible "by all DOCS facilities and by the DOCS central offices.") *with* David Aff (Dkt. No. 27) ¶¶ 8-9 (stating that an inmate's "institutional files", including his or her guidance file, is sent with the inmate upon transfer to a new facility).

Aff. (Dkt. No. 27) ¶ 5.

At the heart of plaintiff's claims in this matter is one such DOCS record, commonly referred to as a "guidance header".  *See* Amended Complaint (Dkt. No. 5) Exh. A.  A guidance header is a document generated by the DOCS based upon information obtained principally from outside sources, including an inmate's PSR as well as official court records regarding his or her conviction.  David Aff. (Dkt. No. 27) ¶¶ 6, 7.

Plaintiff's guidance header includes a section entitled "description of pattern of criminal behavior", which reads as follows:

> Vincent Antonucci has a criminal record dating back to 1962 (age 18) and consisting of approx. 20 arrests for theft and sexual/exhibitionism acts in N.J., Nevada, Illinois, Va., Mo., Calif., and N.Y.S. He has 1 felony conviction for sexual abuse 2 (3 yrs. prob.) in which he exposed himself and fondled a 10 yr. old girl in 1976.  Additionally, he has 1 Y.O. adjudication for P.L. (Prob.) and approx. 8 misd. convictions for public lewdness, molesting and thefts that resulted in fines, probation and jail sentences.  There are several open charges for indecent exposure, public lewdness and annoy/molest. children.
>
> The I.O. involved Antonucci, acting in concert, robbing a restaurant at gunpoint.  While fleeing the scene, they were approached by a state trooper, whom they disarmed and fired shots at.  He admits his part in the robbery but denies shooting at the trooper.

Amended Complaint (Dkt. No. 5) Exh. A.

In 2001 plaintiff made a request to the program committee at

Greene for a work assignment in the state shop or laundry.  Amended

Complaint (Dkt. No. 5) § 6, ¶ 2.  That application, as well as another for a

job in maintenance, were denied; plaintiff attributes those determinations

to the history of sex crimes reflected in his prison records.  *Id.*

On April 24, 2003 plaintiff wrote to Robert K. Woods, who at the time

was the Deputy Superintendent of Security Services at Greene,

requesting that he be granted outside clearance.  Amended Complaint

(Dkt. No. 5) § 6, ¶ 3; Woods Aff. (Dkt. No. 27) ¶ 4, Exh. A.  Outside

clearance is required in order to allow inmates to leave the prison,

including in connection with temporary work assignments such as with a

lawn and grounds crew.  Woods Aff. (Dkt. No. 27) ¶ 5.  Because such

outside clearance can result in a prisoner coming into contact with

members of the community, an inmate's history is carefully reviewed in

order to determine whether he or she would present a danger if such

clearances were to be conferred.  *Id.*  Among the matters considered

when determining whether to grant outside clearance is an inmate's

record, and in particular whether it contains any convictions for sex

offenses.[3]  Woods Aff. (Dkt. No. 27) ¶¶ 6-7.

After reviewing plaintiff's records, including his guidance header, Deputy Superintendent Woods responded by writing dated April 25, 2003 denying Antonucci's request for outside clearance, explaining his reasoning as follows:

> I found in your early criminal history you were convicted for sex related crimes.  For outside clearance, I have consistently denied all applicants who have a history of any sex crime.

Amended Complaint (Dkt. No. 5) Exh. C.  While not disputing that he has in fact been convicted of one or more sex crimes, plaintiff contends that his guidance header is inaccurate in two respects.  First, he asserts that his 1976 sexual abuse conviction, which is referred to in the guidance header as a felony, was in fact a misdemeanor conviction, and did not

---

[3]      DOCS Directive No. 4950, entitled "Guidelines for the Selection of Inmates for Outside Assignments", includes the following provision:

> Conviction for a sex offense requires careful review and consideration.  Sex offenses committed by force, threat of force, or resulting in physical injury to the victim exclude an inmate from consideration.

> A history of sex offenses requires careful review, even though the instant offense may not be sex related, before consideration may be given.

DOCS Directive No. 4950, § III(A)(3) (included in the record as Woods Aff. (Dkt. No. 27) Exh. B).

involve molestation or fondling, as noted in the header. Secondly,

Antonucci acknowledges his role in the armed robbery which resulted in

his 1986 conviction, but denies that he shot at the state trooper who

apparently confronted the plaintiff and his partner and was disarmed by

them.[4]

II.   PROCEDURAL HISTORY

_____Plaintiff commenced this action on May 27, 2005, and filed an

amended complaint, at the directive of the court, *see* Dkt. No. 4, on June

25, 2003.  Dkt. Nos. 1, 5.  As defendants, plaintiff's complaint names

Greene Superintendent Joseph David and Glenn Goord, Commissioner of

the DOCS.  *Id.*   Plaintiff's complaint asserts claims based upon the

maintenance of inaccurate records by the DOCS and the denial of

privileges and assignments based upon those records, and seeks a

mandatory injunction requiring the DOCS to investigate and to correct its

records.  *Id.* §§ 7, 9.

Following joinder of issue by their filing of an answer September 29,

2003, Dkt. No. 13, defendants moved on December 31, 2004 seeking the

---

[4]      As is indicated above, the guidance header in fact acknowledges
plaintiff's denial of having shot at the trooper.  *See* Amended Complaint (Dkt. No. 5)
Exh. A.

entry of summary judgment dismissing plaintiff's claims.  Dkt. No. 27.  In

their motion, defendants have asserted a variety of grounds for dismissal,

many of which relate to several prior, unsuccessful efforts by the plaintiff,

in both state and federal courts, to secure modification of his PSR in order

to rectify the errors which he now advances in support of his claims.

Defendants argue that Antonucci is precluded by res judicata and/or

collateral estoppel, as well as under the *Rooker-Feldman* doctrine, from

asserting the claims set forth in his complaint in light of those

unsuccessful efforts.[5]  Defendants further contend that in any event, since

no constitutional violation results from  reliance by the DOCS upon

erroneous information received from outside sources, provided the agency

has no basis to know or reasonably believe that the information may not

be accurate, plaintiff's complaint is subject to dismissal on the merits.

Lastly, defendants assert that plaintiff's claims against Superintendent

David are moot, based upon his transfer to another prison facility, since

plaintiff seeks only injunctive relief in the form of a directive that his

records, which are allegedly maintained at a facility level, be adjusted.

---

[5]     *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 472, 103 S.
Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *see*
pp. 19-22, *post.*

In response to defendants' motion, plaintiff moved on January 26, 2005 for the entry of summary judgment in his favor, asserting the lack of any genuine, triable issues of material fact and his entitlement to judgment in his favor as a matter of law.  Dkt. No. 32.  Defendants have since responded by the filing of a reply affidavit on February 17, 2005 in which, significantly, they acknowledge the possibility of an error in plaintiff's guidance header and promise to investigate in order to determine whether plaintiff's 1976 conviction was for a felony level sexual abuse charge, or instead for a misdemeanor.  Dkt. No. 34.

The parties' cross-motions, which are now ripe for determination, have now been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.[6]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

---

[6]     A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

### B.    Preclusion Based Upon Prior Proceedings

The record now before the court discloses a series of efforts on plaintiff's part to correct information contained in his PSR including some, though not all, of the discrepancies now urged in support of his constitutional claims in this action. Defendants argue that by virtue of those efforts, plaintiff is now precluded from asserting the claims contained within his complaint in this action.

### 1.    Prior Proceedings

In or about November of 2000, plaintiff commenced a proceeding in New York State court pursuant to Article 78 of the N.Y. Civil Practice Law

12

and Rules ("CPLR") naming, as respondents, the judge who sentenced

him, the district attorney responsible for his prosecution, DOCS

Commissioner Goord and a probation department representative, and

seeking to rectify alleged inaccuracies in his PSR.   Ullman Decl. (Dkt. No.

27) ¶ 12, Exh. F.  In that petition, Antonucci challenged a host of alleged

inaccuracies in his PSR, most of which are not germane to his pending

claims in this action.  Chief among the errors cited in that petition was a

statement, attributed to the PSR, to the effect that it was Antonucci who

fired upon the state trooper that confronted the pair shortly after their

restaurant robbery.  Ullman Decl. (Dkt. No. 27) Exh. F, ¶ 28.  Plaintiff's

Article 78 petition was dismissed on November 24, 2000, based upon the

court's finding that the appropriate vehicle for remedying the PSR's

inaccuracies was a motion to the sentencing court pursuant to Article 440

of the N.Y. Criminal Procedure Law.  Ullman Decl. (Dkt. No. 27) ¶ 13, Exh.

G.  That determination was affirmed, on appeal, by the New York State

Supreme Court Appellate Division, Second Department, which found that

"[t]he challenges now made to the accuracy of the presentence report

should have been raised before [the] sentencing court."  *Id.* ¶ 14, Exh. H;

*see Antonucci v. Nelson*, 298 A.D.2d 388, 389, 751 N.Y.S.2d 395, 396 (2d

Dept. 2002).

On January 2, 2003 plaintiff commenced an action in this court against DOCS Commissioner Goord, seeking an order directing expungement of allegedly inaccurate information contained within plaintiff's DOCS files as well as correction of the PSR issued by the Rockland County Probation Department in connection with his 1986 sentencing.  *See Antonucci v. Goord*, No. 9:03-CV-01 (LEK/RFT) (N.D.N.Y., filed 1/2/03).  Upon routine review pursuant to 28 U.S.C. § 1915(e), District Judge Lawrence E. Kahn dismissed plaintiff's complaint in that action on January 14, 2003, *sua sponte*, noting that the presence in prison files of inaccurate information derived from outside sources does not result in a constitutional injury caused by the DOCS or prison officials, and in any event there was no indication that the allegedly inaccurate information was being used at the time to deny Antonucci any privileges or parole.  Civil Action No. 9:03-CV-01 (LEK/RFT), Dkt. No. 4, slip op. at 2-3. It does not appear that plaintiff appealed from that determination.

In or about October of 2003, plaintiff commenced yet another proceeding addressing the perceived inaccuracies in his PSR.  In that matter, also brought pursuant to Article 78 of the CPLR, plaintiff named

Bryon Travis, Chairman of the New York State Division of Parole, as a respondent, and challenged the denial of his application for parole, as having been both arbitrary and capricious and based upon inaccuracies in his PSR.  Ullman Decl. (Dkt. No. 27) ¶ 17, Exh. K.  In his petition in that Article 78 proceeding, Antonucci specifically made reference to allegedly false information contained in the PSR and imported into the DOCS records.  *See id.* Exh. K, ¶¶ 15, 19, 20.  That Article 78 petition was dismissed on February 17, 2004, the court noting, *inter alia*, that Antonucci's challenge to the contents of the PSR should have been made before the sentencing court.  Ullman Decl. (Dkt. No. 27) ¶ 18, Exh. L.   It does not appear that petitioner appealed from that determination.  *Id.* ¶ 19.

### 2.    Preclusive Effects of the Prior Proceedings

Based upon this procedural sequence of events, defendants argue that plaintiff's claims are precluded by res judicata or collateral estoppel, and that in any event the *Rooker-Feldman* doctrine precludes this court from interfering with the workings of the state courts by addressing plaintiff's claims.

### a)    Res Judicata Generally

15

The doctrine of res judicata, or claim preclusion, precludes a party or someone in privity with it from relitigating a claim which was or could have been raised in an action which resulted in the entry of final judgment on the merits.  *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002).  The entry of such a prior judgment, however, does not serve to extinguish claims which did not exist and could not have been sued upon in the prior action, nor does it bar such subsequent litigation when the court in the prior action could not have afforded the relief now requested. *Marvel*, 310 F.3d at 287.

Defendants' claim of res judicata is dependent upon several prior judicial determinations, including those entered in New York courts.  When considering the question of res judicata, a federal court must give a state court determination the same preclusive effect as would be applicable in the jurisdiction in which the earlier judgment was entered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984) (citing *Allen*, 449 U.S. at 96, 101 S. Ct. at 415; *see also* 28 U.S.C. 1738.  The principle applies with equal force in civil rights action commenced under 42 U.S.C. § 1983.  *Migra*, 465 U.S. at 81-84, 104 S.

16

Ct. at 896-98.  The application of New York's law of res judicata does not alter the landscape, however, since "there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel."  *Marvel*, 310 F.3d at 286 (citing *Pike v. Freeman*, 266 F.3d 78, 90 n. 14 (2d Cir. 2001)).  Under New York law "as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485, 386 N.E.2d 1328, 1331, 414 N.Y.S.2d 308, 310-11 (1979).

Because res judicata does not bar subsequent litigation where the court in the prior action could not have awarded the relief requested in the new action, *see Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999), a prior unfavorable Article 78 determination ordinarily does not foreclose a plaintiff from commencing a subsequent section 1983 civil rights action for damages, since damages are not recoverable in Article 78 proceeding. *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986); *Allen v. Coughlin*, No. 92 Civ. 6137, 1995 WL 117718, at *2-*3 (S.D.N.Y. Mar. 17, 1995).  In this action, however, because plaintiff seeks only injunctive

relief, in the form of a court directive that his DOCS and PSR records be adjusted to rectify the alleged inaccuracies, which could have been awarded under Article 78, there is no bar to the application of res judicata in this case, provided that its requirements can otherwise be met. *Fay v. South Colonie  Cent. Sch. Dist.*, 802 F.2d 21, 29-30 (2d Cir. 1986), *overruled on other grounds*, *Taylor v. Vermont Dept. of Education*, 313 F.3d 768 (2d Cir. 2002).

### b)    Collateral Estoppel Generally

Collateral estoppel, sometime referred to as issue preclusion, bars a litigant who was a party to a prior proceeding from relitigating any issue which was decided against that party, provided that 1) the identical issue was raised in the prior proceeding; 2) the issue was actually litigated and decided in the prior proceeding; 3) the party to be precluded had a full and fair opportunity in that prior action to litigate the particular issue; and 4) resolution of the issue was necessary to support a valid and final judgment on the merits. *Marvel*, 310 F.3d at 288-89 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998)); *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985).  Defendants bear the burden of establishing a basis for invoking

collateral estoppel, although a party asserting that it was not afforded a full and fair opportunity in the prior action to litigate the issue in dispute must shoulder the burden on that question. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (citing *Kaufman*, 65 N.Y.2d at 456, 482 N.E.2d at 67, 492 N.Y.S.2d at 588).

c)   <u>*Rooker-Feldman*</u>

_____Separate from and independent of res judicata and collateral estoppel is the judicially created teaching, known as the "*Rooker-Feldman*" doctrine, which recognizes jurisdictional limitations placed by our dual judicial system on the power of a lower federal court to directly review a state court determination. *Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 197-98 (2d Cir. 1996), *overruled by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, ___ U.S. ___, 125 S. Ct. 1517 (2005). Under *Rooker-Feldman* federal district courts, as courts of original jurisdiction, lack the power to entertain claims which, if substantiated, would effectively overrule or modify a state court decision. *Moccio*, 95 F.3d at 198-99.

Recognizing that many courts have applied *Rooker-Feldman* in a manner which effectively expands its boundaries well beyond those

envisioned in the two seminal decisions, the Supreme Court recently emphasized the narrow limits of the rule in *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, observing that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." ___ U.S. at ___, 125 S. Ct. at 1521-22. The Court distinguished such rare situations, which implicate a district court's subject matter jurisdiction, from the more common instance where a federal plaintiff does not seek to undo a state judgment, but rather "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party[.]" *Id.* at 1527.  The Court noted that in cases involving parallel or related state and federal cases which do not include a direct challenge of a state court determination, other tenets, involving the non-jurisdictional law of preclusion, as governed in part by the Full Faith and Credit Act, 28 U.S.C. § 1738, and the judicially created rules of abstention, are appropriately consulted.  *Id.* at 1527 (citation and internal quotation marks omitted); *compare Vargas v. The City of New York*, 377 F.3d 200, 205 (2d

20

Cir. 2004) (holding that the *Rooker-Feldman* doctrine was not confined to claims seeking direct review of judgments of state courts but extended also to claims that could have been brought in state court and were inextricably intertwined with earlier state court determinations).  In short, the Court's decision in *Exxon Mobil* effectively laid to rest the suggestion asserted by many courts – including the Second Circuit – that the *Rooker-Feldman* doctrine and state court preclusion law are co-extensive, pointedly noting that the canon "does not otherwise override or supplant preclusion doctrine[.]"[7] 125 S. Ct. at 1522.

      c)    <u>Application of Res Judicata, Collateral Estoppel and *Rooker-Feldman* in this Case</u>

Before turning to the application of these three separate but related doctrines, it is important first to define what issues were presented to and decided by the courts in the prior proceedings implicated in this portion of defendants' motion.  Significantly, none of the state court proceedings

---

      [7]      Although prior formulations of the *Rooker-Feldman* doctrine seemingly invalidated federal causes of action that were "inextricably intertwined" with prior state court determinations, little guidance was available to lower courts as to the meaning of that phrase. *Moccio*, 95 F.3d at 198-99 (quoting *Feldman*, 460 U.S. at 482-84 n.16, 103 S. Ct. at 1316 n.16).  While in *Exxon Mobil* the Supreme Court acknowledged its prior use of that terminology in *Feldman*, 125 S. Ct. at 1523 n.1, the continued vitality of that formulation post-*Exxon Mobil* is significantly in doubt.  *L.A.M. Recovery Inc. v. Dept. of Consumer Affairs*, 377 F.Supp.2d 429, 434-35 (S.D.N.Y. 2005).

commenced by the plaintiff sought, as specific relief, alteration of DOCS

records.  While it is true that Commissioner Goord was a named

respondent in plaintiff's first Article 78 proceeding, its thrust was correction

of information contained within the PSR prepared at the time of

Antonucci's sentencing in 1986.   Similarly in none of those prior

proceedings did a state court make a determination that the information

contained within plaintiff's PSR was accurate.[8]  Consequently, this court's

review and adjudication of plaintiff's claims in the instant action is not

precluded by issue or claim preclusion, nor does it implicate interference

with the workings of the state courts, in violation of *Rooker-Feldman*.

The legal effects of plaintiff's earlier federal court suit upon the

claims now before the court presents a closer question.  The complaint in

that action, in which Commissioner Goord was the sole named defendant,

sought relief which could be regarded as identical to that now requested,

although the focus of plaintiff's complaint in that action was clearly on

plaintiff's PSR, rather than the guidance header now at issue.  *See* Civil

Action No. 9:03-CV-01 (LEK/RFT), Dkt. No. 1.  In his decision dismissing

plaintiff's complaint in that action, District Judge Kahn found that because

---

[8]       Neither party has supplied the court with a copy of plaintiff's 1986 PSR.

the DOCS did not create the information contained in its records, but instead only received the data from a third-party, it is not responsible for any constitutional violation resulting from the alleged inaccuracies.  Civil Action No. 9:03-CV-01, Dkt. No. 4, slip op. at 2-3.  The decision went on to note that the information contained in the PSR was not being utilized by the DOCS to deny him any privileges or parole.  *Id.*  The potential import of this latter statement is that, were the allegedly inaccurate information to have been used to support the denial of parole or any prison privileges, a different situation could have been presented.  From the court's citation of *LaBounty v. Coombe*, No. 95 CIV. 5592, 1999 WL 177438 (S.D.N.Y. Mar. 30, 1999), which lists as one of three elements of a limited constitutional right to have incorrect information expunged from a file the requirement of a "probability" that the information will be relied upon in a "constitutionally significant" manner, such as for parole decisions, I conclude that a different result could have obtained in that case had there been such a showing.  For this reason, I recommend against reliance upon District Judge Kahn's earlier determination as either barring plaintiff's assertion of the claim in this action, or as issue preclusion.  *Marvel Characters,* 310 F.3d at 287-89.

In sum, because none of the prior proceedings both involved

plaintiff's DOCS guidance records and held that the information contained

within those records was accurate, and additionally none addressed

plaintiff's claims in the context of denials of his subsequent requests for

prison privileges, I recommend rejection of defendants' claims of

preclusion based upon plaintiff's various, prior court proceedings.

C.   Merits

Plaintiff's action is brought under 42 U.S.C. § 1983, which provides

a right of action for "the deprivation of any rights, privileges, or immunities

secured by the Constitution and Laws[.]"   42 U.S.C. § 1983.   That section

empowers a court to grant relief when federally protected rights, including

those under the Constitution, have been violated under color of state law.

42 U.S.C. § 1983; *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816,

105 S. Ct. 2427, 2432 (1985).   Section 1983 does not, however, create or

establish substantive rights, instead merely providing a vehicle for

enforcement of federal statutory and constitutional rights.   *Id.*

Plaintiff's chief complaint in this action stems from his assertion that

because of inaccurate information contained in his inmate guidance

header, a record created and maintained by the DOCS, he was denied

certain employment positions within Greene.  Plaintiff claims, principally, that information contained within his DOCS guidance header, and derived from his 1986 PSR, is inaccurate – a claim which he has been pursuing with great persistence for many years, in multiple fora.  To the extent that plaintiff's complaint challenges information maintained by the DOCS but derived from external sources, that claim is subject to dismissal since neither the DOCS nor its employees are responsible for any constitutional injury suffered as a result of such false, external information.  *LaBounty*, 1999 WL 177438, at \*2-\*3 (collecting cases); *see also Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980).  Thus, to the extent they are bottomed upon false information contained within his PSR, plaintiff's section 1983 claims against the DOCS Commissioner and Superintendent David are subject to dismissal.

Giving plaintiff the benefit of all inferences, and resolving all ambiguities in his favor, it appears from the record now before the court that the DOCS may have imported information into its records regarding the plaintiff that was false, and not well supported by external sources – a possibility which defendants acknowledge in their reply papers. Specifically, it now appears likely that plaintiff's 1976 conviction was not

listed as a felony in his PSR, and indeed his conviction history, which is attached as an exhibit to plaintiff's amended complaint, seems to bear this out.  *See* Amended Complaint (Dkt. No. 5) Exh. B; *see also* Ullman Reply Decl. (Dkt. No. 34) ¶ 4.  The question remains whether the inclusion of such inaccurate information, which is neither derived from nor substantiated by external sources, in plaintiff's  DOCS records gives rise to a constitutional claim.

Courts have recognized that a prison inmate has a limited constitutional right to have incorrect information expunged from his or her file under certain circumstances.  *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir.), *cert. denied*, 444 U.S. 925, 100 S. Ct. 263 (1979); *LaBounty*, 1999 WL 177438, at \*2; *Farinaro v. Coughlin*, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986).  In order to qualify for relief under this line of cases, a plaintiff must establish 1) the existence of particular false information regarding his or her prior criminal history or disciplinary record; 2) a probability that the information will be relied upon in a constitutionally significant manner, such as for parole decisions; and 3) that the prisoner, as a jurisdictional predicate, has requested that the false information be

expunged, but prison officials have declined.[9]  *Paine*, 595 F.2d at 201;

*LaBounty*, 1999 WL 177438, at *2; *Farinaro*, 642 F. Supp. at 282; *see*

*also James v. Scully*, No. 87 CIV. 6005, 1988 WL 34814, at *6 (S.D.N.Y.

Apr. 5, 1988).

In this instance plaintiff is unable to establish a likelihood that the

allegedly false information contained within his DOCS guidance header

has been, or is likely to be, relied upon in a constitutionally significant

manner such as in connection with a parole decision or a deprivation of

some other cognizable liberty interest – a prerequisite to establishment of

a constitutional violation based upon the existence of allegedly inaccurate

information in official records.  *See Pruett*, 622 F.2d at 258; *Paine*, 595

F.2d at 201.  In his complaint, plaintiff alleges that the false information

contained within his guidance header was relied upon to deny him work

assignments.  Such decisions, however, do not arise to a level sufficient

to support a constitutional claim based upon the existence of allegedly

inaccurate records.  *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1119

(S.D.N.Y. 1994) ("elaborating on [the] last element, courts have stated

---

[9]     Plaintiff's amended complaint and submissions to the court are somewhat equivocal as to whether a specific request was made to prison officials for adjustment of the allegedly incorrect information.  At a minimum, however, an issue of fact exists surrounding this element of the applicable test.

that there must be a probability that the false information will be relied on for decisions about issues such as parole or good time credits, not merely for decisions about internal matters such a [sic] work assignments") (*citing Paine*, 595 F.2d at 202 and *Farinaro*, 642 F. Supp. at 282); *see also Farinaro*, 642 F. Supp. at 282.

In sum, while plaintiff has demonstrated at least a genuine issue of material fact as to whether his DOCS guidance header contains inaccurate information which was not derived from external sources, he has failed to establish that it either was or is likely to be used in a constitutionally significant matter. Accordingly, I recommend dismissal of plaintiff's section 1983 claim on the merits.[10]

IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action seeks correction of DOCS records derived, in part, based upon a PSR prepared in connection with his sentencing in 1986 on the charge for which he is presently incarcerated.

---

[10]   From defendants' submissions it appears that the decision to deny plaintiff outside clearance was based upon the fact that his record contained multiple sex related convictions, a fact which Antonucci does not dispute, and that the question of whether the plaintiff's 1976 sexual abuse conviction was for a felony, or instead a misdemeanor, was not outcome determinative with regard to that determination. *See* Woods Aff. (Dkt. No. 27) ¶¶ 14-15, Exhs. B, C.

Because this action seeks expungement of DOCS records which were not the subject of any prior proceedings, and additionally since none of the earlier actions resulted in a court determination that the information contained within plaintiff's PSR report was in fact accurate, defendants' argument that plaintiff's claims in this action are barred by res judicata, collateral estoppel and/or the *Rooker-Feldman* doctrine are unavailing and provide no basis for dismissal of plaintiff's claims.

Addressing the merits, I find that because plaintiff has not demonstrated the existence of inaccurate information within his DOCS records which have been, or are likely to be, relied upon to deprive him of a constitutionally significant liberty interest, his claims are subject to dismissal on the merits.

Based upon the foregoing, it is hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 27) be GRANTED, and that plaintiff's complaint be dismissed in its entirely; and is further hereby

RECOMMENDED that plaintiff's cross-motion for summary judgment (Dkt. No. 32) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 6, 2005
            Syracuse, NY

G:\ISSUES\civil rights\Rooker-Feldman\antonucci.wpd