**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**VINCENT ANTONUCCI,**

                             **Plaintiff,**

            **v.**                                      **9:03-CV-653**
                                                         **(FJS/DEP)**

**JOSEPH DAVID, Superintendent of Greene**
**Correctional Facility; and GLEN GOORD,**
**Commissioner of New York State**
**Department of Correctional Services**,

                             **Defendants**.

_____

**APPEARANCES**                         **OF COUNSEL**

**VINCENT ANTONUCCI**
**86-A-9095**
Eastern New York Correctional Facility
P.O. Box 338
Napanoch, New York 12458
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**          **LISA ULLMAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      Plaintiff filed his complaint against Defendants on May 27, 2003, and filed an amended

complaint, in compliance with the Court's June 11, 2003 Order, on June 25, 2003.  _See_ Dkt. Nos.

1, 5.  Plaintiff asserts that Defendant David, who is the Superintendent at Greene Correctional Facility ("Greene"), and Defendant Goord violated his constitutional right to have the Department of Correctional Services ("DOCS") accurately maintain his prison record.[1]  Plaintiff asserts that this false information resulted in him being denied certain work assignments.  As a result, Plaintiff seeks a mandatory injunction requiring DOCS to investigate and correct its records.

On December 31, 2004, Defendants David and Goord moved for summary judgement on the ground that Plaintiff made several prior, unsuccessful efforts in both federal and state courts to secure modification of his PSR to rectify the errors which he now advances in support of his claims.  Additionally, Defendants contended that, because no constitutional violation resulted from DOCS' reliance upon erroneous information received from outside sources, provided that DOCS had no basis to know or reasonably believe that the information might not have been accurate, Plaintiff's complaint was subject to dismissal on its merits.  Lastly, Defendants asserted that Plaintiff's claims against Defendant David were moot because Plaintiff has been transferred to another prison facility and he was only seeking injunctive relief in the form of a directive that his records, allegedly maintained at the facility level, be adjusted.  On January 26, 2005, Plaintiff cross-moved for summary judgement asserting a lack of any genuine triable issues of material fact and, thus, entitlement to judgement as a matter of law.[2]

---

[1] The alleged false information, which was derived from a Pre-Sentence Report ("PSR") that probation officials prepared at the time of Plaintiff's sentencing, is contained in records that DOCS maintains.

[2] On February 17, 2005, Defendants responded to Plaintiff's cross-motion by acknowledging the possibility of an error in Plaintiff's guidance header relating to his 1976

(continued...)

On September 6, 2005, Magistrate Judge Peebles issued a Report and Recommendation in which he recommended that the Court grant Defendants' motion for summary judgement, deny Plaintiff's cross-motion for summary judgement, and dismiss Plaintiff's complaint in its entirety. Specifically, Magistrate Judge Peebles found that Defendants' preclusion arguments provided no basis for dismissal and that Plaintiff demonstrated at least a genuine issue of material fact as to whether his DOCS guidance header contained inaccurate information which was not derived from external sources.  However, even accepting Plaintiff's argument that DOCS inaccurately imported information on his guidance header, Magistrate Judge Peebles concluded that Plaintiff could not establish a likelihood that the false information had been, or was likely to be, relied upon in a constitutionally significant manner, which is a prerequisite for establishing a constitutional violation based on inaccurate information in official records.  Accordingly, Magistrate Judge Peebles recommended that this Court grant Defendants' motion on the ground that Plaintiff's claims lacked merit.  Currently before the Court are Plaintiff's objections to that recommendation.

## II. DISCUSSION

**A.     Standards of Review**

   ***1. Review of Magistrate Judge's Report-Recommendation***

   A district court judge must review the findings and recommendations in a magistrate judge's report-recommendation to which a party has filed timely objections *de novo* or for clear

---

[2](...continued)
felony sexual abuse, which they promised to investigate.  *See* Dkt. No. 34.

error those findings and recommendations to which the parties do not object.  *See Gill v. Smith*, 283 F. Supp. 2d 763, 766 (N.D.N.Y. 2003) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)) (other citations omitted).

### 2. Summary judgment standard

A court will grant a motion for summary judgment where ""the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  When summary judgement is sought, the moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim at issue; the failure to meet this burden warrants denial of the motion.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In analyzing such a motion, the court must view the facts in the light most favorable to the party opposing the motion.  *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990).  Moreover, when a plaintiff is proceeding *pro se*, the court must afford special latitude and read his pleadings liberally.  *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Nonetheless, when the moving party has met its burden, the nonmoving party, even if he is *pro se*, must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  At that point, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587

-4-

(quotation and other citation omitted).

**B.      Res Judicata, Collateral Estoppel and the *Rooker-Feldman* Doctrines**

The doctrine of res judicata precludes a party or someone in privity with it from relitigating a claim that has been raised, or could have been raised, in a prior action that resulted in the entry of a final judgement on the merits.  *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)).  When considering whether two actions arise from the same transaction or occurrence, a court "'look[s] to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  *Id.* at 287 (quoting *Pike,* 266 F.3d at 91).  However, "a prior judgement 'cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'"  *Id.* (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S. Ct. 865, 99 L. Ed. 1122 (1955)).  Finally, "res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action."  *Id.* (citing *Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999)) (other citations omitted).

A related, but distinct, doctrine is the doctrine of collateral estoppel, which prevents a party or someone in privity with it "from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Id.* at 288 (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998)) (other citation omitted).  This doctrine applies when

> "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgement on the merits."

*Id.* at 288-89 (quoting *Boguslavsky*, 159 F.3d at 720).

The party that asserts collateral estoppel bears the burden of establishing a basis for invoking that doctrine, "while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate [the issue] in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (citing *Kaufman*, 65 N.Y.2d at 456, 492 N.Y.S.2d at 588, 482 N.E.2d at 67).

Finally, separate from the doctrines of res judicata and collateral estoppel is the *Rooker-Feldman* doctrine, which is a judicially-created doctrine that recognizes jurisdictional limitations on a lower federal court's power to review a state court's determination directly. *See Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198-99 (2d Cir. 1996), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283 (2005). Under this doctrine, federal district courts, as courts of original jurisdiction, lack the power to entertain claims which, if substantiated, would effectively overrule or modify a state court decision. *See id*. The Supreme Court, however, has emphasized the narrow limits of this doctrine, noting that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgements rendered before the district court proceedings commenced and inviting district court review and rejection of those judgements." *Exxon Mobil*, 544 U.S. at 284.

In or about November of 2000, Plaintiff commenced a proceeding in New York State

court pursuant to Article 78 of the New York Civil Practice Law and Rules against the judge who sentenced him, the district attorney who prosecuted him, DOCS Commissioner Goord and a probation department representative. *See* Report and Recommendation at 13. Plaintiff's action sought to rectify alleged inaccuracies in his PSR. *See id.* The court dismissed Plaintiff's Article 78 petition based upon its finding that the appropriate vehicle for remedying the alleged inaccuracies in Plaintiff's PSR was a motion to the sentencing court pursuant to Article 440 of New York Criminal Procedure Law. *See id.* The New York State Supreme Court Appellate Division, Second Department, affirmed this conclusion, finding that "[t]he challenges now made to the inaccuracy of the presentence report should have been raised before [the] sentencing court." *See id.* (quotation and other citation omitted).

On January 2, 2003, Plaintiff commenced an action in this District against DOCS Commissioner Goord, seeking an order directing expungement of allegedly inaccurate information contained within his DOCS records and correcting the PSR that the Rockland County Probation Department issued in connection with his 1986 sentencing. *See id.* at 14 (citation omitted). The court dismissed that action on January 14, 2003, on the grounds that the presence of inaccurate information in prison files derived from outside sources does not result in a constitutional injury caused by DOCS or prison officials and that the alleged inaccurate information was not being used to deny Plaintiff any privileges or parole. *See id.* Finally, in or about October of 2003, Plaintiff commenced another Article 78 proceeding to address the alleged inaccuracies in his PSR. In that matter, Plaintiff brought suit against Byron Travis, Chairman of the New York State Division of Parole, challenging the denial of his application for parole as being both arbitrary and capricious and based upon inaccuracies in his PSR. *See id.* at 15. The

court dismissed Plaintiff's petition on February 17, 2004, noting that Plaintiff should have challenged the contents of his PSR before the sentencing court.  *See id.*

Magistrate Judge Peebles found that none of the state court proceedings that Plaintiff previously commenced sought, as specific relief, alteration of DOCS records, and none of these proceedings determined that the information contained in Plaintiff's PSR was accurate. Additionally, he found that, although the relief that Plaintiff sought in the prior proceedings was almost identical to the relief he seeks in the current action, Plaintiff's prior federal suit did not specifically address his claims in the context of the denials of his subsequent requests for prison privileges.  Accordingly, Magistrate Judge Peebles recommended that this Court reject Defendants' preclusion arguments.

Neither party objects to this recommendation.  Moreover, the Court's review of the entire record in this case demonstrates that Magistrate Judge Peebles' analysis of res judicata, collateral estoppel and the *Rooker-Feldman* doctrine and their application to this case is legally correct. Accordingly, the Court adopts Magistrate Judge Peebles' recommendation and rejects Defendants' preclusion arguments.  Thus, the Court will address the merits of Plaintiff's claims.


**C.      Plaintiff's claims regarding the information in his DOCS file**

Section 1983 provides a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws[,]" 42 U.S.C. § 1983, and gives a court the power to grant relief when federally-protected rights have been violated under color of state law, *see id.*  Several courts have recognized that a prison inmate has a limited constitutional right under the Due Process Clause to have incorrect information expunged from his file under certain

circumstances.  *See Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980) (citation omitted); *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979); *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1119 (S.D.N.Y. 1994) (collecting cases); *Farinaro v. Coughlin*, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986) (citation omitted).  According to this line of cases, a plaintiff can maintain such a claim if he establishes (1) the existence of particular false information regarding his prior criminal history or disciplinary record; (2) a probability that the information will be relied on in a constitutionally significant manner, such as for parole decisions; and (3) that, as a jurisdictional predicate, he requested that the false information be expunged, but prison officials declined to do so.  *See Paine*, 595 F.2d at 201; *Lowrance*, 862 F. Supp. at 1119; *Farinaro*, 642 F. Supp. at 282.

Moreover, "[e]laborating on this [second] element, courts have stated that there must be a probability that the false information will be relied on for decisions about issues such as parole or good time credits, not merely for decisions about internal matters such a [sic] work assignments." *Lowrance*, 862 F. Supp. at 1119 (citing *Paine*, 595 F.2d at 202) (other citation omitted). However, the Second Circuit has not explicitly adopted the three-part test set forth in *Paine* to determine when, or if, an inmate has a constitutional right to have incorrect information expunged from his prison file.  *See Grant v. Ahern*, No. 03CV0539, 2005 WL 1936175, *4 (N.D.N.Y. Aug. 2, 2005) (noting that the Second Circuit "'has not followed *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), in recognizing that a prisoner has a constitutional right to have incorrect information relied upon in a parole hearing expunged from his or her file.'" (quoting *LaBounty*, 2000 WL 287726, at *2)).

In his Report and Recommendation, Magistrate Judge Peebles noted that it appears that DOCS may have imported information into Plaintiff's record that was false.  DOCS personnel

maintain information regarding DOCS inmates, including facts that bear upon various aspects of incarceration, at the various facilities as well as in DOCS' central offices.  Among the records that DOCS maintains is guidance information, which typically includes facts about a prisoner's criminal history, educational background, drug and alcohol problems, and other data that DOCS uses to help determine appropriate program placement.

Plaintiff's complaint primarily concerns one DOCS record, commonly referred to as a "guidance header."[3]  Plaintiff asserts that his guidance header contains two inaccuracies,[4] which have caused prison officials to deny him certain work assignments that they otherwise would have granted him if his guidance header were correct.[5]

---

[3] A guidance header is a document that DOCS generates based upon information it has obtained from outside sources, including an inmate's PSR and official court records regarding his conviction.

[4] Plaintiff's guidance header includes a section entitled "description of criminal behavior," which provides, in relevant part, (1) that Plaintiff was convicted of one felony for sexual abuse, 2nd degree, in which he exposed himself and fondled a ten year old girl in 1976 and (2) that Plaintiff is presently incarcerated as a result of robbing a restaurant at gunpoint in concert with others and, while fleeing the scene, disarming and firing shots at a state trooper.  *See* Dkt. No. 5. The header also notes that, although Plaintiff admits to his part in the robbery, he denies shooting at the trooper.  *Id*.  Plaintiff does not dispute that he has been convicted of sex crimes, but he claims that his 1976 sexual abuse conviction was not a felony that involved molestation or fondling, but rather was a misdemeanor conviction that involved neither listed offense, and that he did not shoot at the trooper during the robbery.

[5] In 2001, Plaintiff made a request to the Program Committee at Greene for a work assignment in the state shop or laundry.  *See* Dkt. No. 5.  The Program Committee denied that application, as well as another application for a job in maintenance.  *Id*.  Additionally, on April 24, 2003, Plaintiff wrote to Robert K. Woods, the Deputy Superintendent of Security Services at Greene, requesting that he be granted outside clearance, which is required for inmates who are given temporary work assignments outside the prison walls, including lawn and ground work. *See* Dkt. Nos. 5, 27.  Deputy Superintendent Woods denied Plaintiff's request on April 25, 2003, explaining that he consistently denies such clearance to any applicant who has a history of any

(continued...)

-10-

Citing *Paine*, Magistrate Judge Peebles acknowledged that some courts, although not the Second Circuit, have recognized that a prison inmate has a limited constitutional right to have incorrect information expunged from his file under certain circumstances. *See* Report and Recommendation at 26 (citing *Paine v Baker*, 595 F.2d 197, 201 (4th Cir.), *cert. denied*, 444 U.S. 925, 100 S. Ct. 263 (1979)) (other citations omitted). Nonetheless, Magistrate Judge Peebles held that, to the extent that Plaintiff's complaint challenges information that DOCS maintained, but derived from external sources, i.e., third parties, the claim is subject to dismissal because neither DOCS nor its employees are responsible for any constitutional injury suffered as a result of false external information. *See id.* at 25 (citations omitted). Therefore, Magistrate Judge Peebles recommended that this Court dismiss Plaintiff's § 1983 claims against Defendants. *See id.*

Alternatively, even assuming that DOCS imported information into its records regarding Plaintiff that was false and not well supported by external sources, Magistrate Judge Peebles concluded that Plaintiff was not entitled to relief because he had not established a likelihood that Defendants had relied, or were likely to rely, upon the alleged error in a constitutionally significant manner. Magistrate Judge Peebles reasoned that, unlike parole decisions, Plaintiff's allegations that he was denied work assignments did not rise to a level sufficient to support a constitutional claim based on inaccurate records.

Plaintiff objects to this recommendation, arguing, for the first time, that Defendants relied upon the inaccurate guidance header in a constitutionally significant manner because the

---

[5](...continued)
sex crime. *See* Dkt. No. 5.

inaccuracies resulted in the State's decision to deny him parole and that the inaccuracies,

therefore, rise to a level sufficient to support a constitutional claim.  Accordingly, he requests

that the Court require Defendants to correct the inaccuracies in his inmate file.

Although "[s]tates may under certain circumstances create liberty interests which are

protected by the Due Process Clause . . .," *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citing

*Board of Pardons v. Allen*, 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987)), "these

interests will be generally limited to freedom from restraint which . . . imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484

(internal citations omitted).  Moreover, as Magistrate Judge Peebles noted in his Report and

Recommendation, inmates do not have a "constitutional right to work release or any temporary

release program."  *Grant*, 2005 WL 1936175, at *5 (citing *Lee v. Governor of N.Y.*, 87 F.3d 55,

58-59 (2d Cir. 1996)) (other citation omitted).  Accordingly, to the extent that Plaintiff's due

process claim is based upon his allegation that the inaccuracies in his guidance header resulted in

his being denied certain work assignments, the Court adopts Magistrate Judge Peebles'

recommendation and grants Defendants' motion for summary judgement.

Alternatively, even if the Court were to consider Plaintiff's new argument that his

allegedly inaccurate prison file affected the Parole Board's decision to deny him parole, his due

process claim would still be subject to dismissal.[6]  A state prisoner has an interest in parole

protected by the Due Process Clause only if he has "a legitimate expectancy of release that is

grounded in the state's statutory scheme," *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001)

---

[6] The Court notes that, even broadly construed, Plaintiff's complaint is devoid of any
allegations, or even suggestions, that the inaccuracies in his prison file affected the Parole
Board's decision to deny him parole.

-12-

(citations omitted), and "[t]he New York parole scheme is not one that creates [such an]

expectancy . . .," *id.* at 171.  Rather,

> [t]he statute governing parole provides expressly that
> "[d]iscretionary release on parole shall not be granted merely as a
> reward for good conduct or efficient performance of duties while
> confined but after considering if there is a reasonable probability
> that, if such inmate is released, he will live and remain at liberty
> without violating the law, and that his release is not incompatible
> with the welfare of society and will not so deprecate the
> seriousness of his crime as to undermine respect for law."

*Id.* (quoting N.Y. Exec. Law § 259-i(2)(c)(A)).

Therefore, because under New York's statutory scheme Plaintiff does not have a

legitimate expectancy of release, he does not have a liberty interest in parole that is protected by

the Due Process Clause.  *See id.* (citing *Boothe v. Hammock*, 605 F. 2d at 664).

Absent such an interest, an inmate may only bring a due process claim challenging a

denial of parole if that denial was either arbitrary or capricious.  *See Romer v. Travis*, No. 03

Civ.1670, 2003 WL 21744079, *6 (S.D.N.Y. July 29, 2003) (noting that because "'[t]he New

York parole scheme is not one that creates in any prisoner a legitimate expectancy of release . . .'

[an inmate] can claim a due process violation only if the Parole Board has denied his release

'arbitrarily or capriciously.'" (quotation omitted) (footnote omitted)).  Under New York Codes,

Rules and Regulations, if parole is denied, "the inmate shall be informed in writing, within two

weeks of his interview, of the factors and reasons in detail for such denial."  N.Y. Comp. Codes

R. & Regs. tit. 9, § 8002.3 (2005).  Moreover, "[w]here . . . the prisoner's minimum sentence was

set by the court and not by the Parole Board, the Board must specifically consider, among other

factors, 'the seriousness of the offense with due consideration to the type of sentence, length of

sentence and recommendations of the sentencing court.'"  *Romer*, 2003 WL 21744079, at *6

(quoting Exec. Law § 259-i(2)(c)(A), - i(1)(a)) (other citation and footnote omitted).  "The Parole

Board may give whatever weight it deems appropriate to the statutory factors, and is 'entitled to

determine that the nature of the crime outweighed the positive aspects of [petitioner's] record.'"

*Id.* (quoting *Morel v. Thomas*, 2003 WL 21488017 at *4-5) (footnote omitted).  Finally, the

statutory guidelines, based upon the crime's severity and the inmate's past criminal history, "'are

intended only as a guide, and . . . not [as] a substitute for the careful consideration of the many

circumstances of each individual case.'"  *Barna*, 239 F.3d at 171 (quoting 9 N.Y.C.R.R.

§ 8001.3(a)).

   In this case, the Parole Board notified Plaintiff that it was denying him parole because the

instant offenses of robbery in the first degree, robbery in the second degree, and criminal

possession of a weapon in the second degree were a continuation of Plaintiff's pattern of lewd

and larcenous offenses, dating back to 1962 and spanning several states.  *See* Plaintiff's

Statement of Facts at (unnumbered) 2.  The Parole Board's explanation demonstrates that it

considered the seriousness of Plaintiff's offense as well as his past criminal history in making its

decision, as it was required to do.  Thus, there is no basis for finding that the Parole Board's

determination to deny Plaintiff parole was arbitrary or capricious.

   Accordingly, for all of the above-stated reasons, the Court adopts Magistrate Judge

Peebles' Report and Recommendation in its entirety and grants Defendants' motion for summary

judgement.  However, before it enters a judgement in this matter, the Court orders Defendants to

notify the Court and Plaintiff in writing of the result of their investigation into the potential error

in Plaintiff's guidance header and what remedy, if any, they propose to take to correct that error.[7]

### III. CONCLUSION

After reviewing Magistrate Judge Peebles' September 6, 2005 Report and

Recommendation, Plaintiff's objections thereto, the relevant parts of the record and the applicable

law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' September 6, 2005 Report and

Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgement is **GRANTED**; and the Court

further

**ORDERS** that Plaintiff's cross-motion for summary judgement is **DENIED**; and the

Court further

**ORDERS** that, within **ten days** of the date of this Order, Defendants shall notify the

Court and Plaintiff in writing of the findings of their investigation into the potential error in

Plaintiff's guidance header and what remedy, if any, they propose to take to correct that error; and

the Court further

---

[7] Defendants filed an affidavit in response to Plaintiff's January 26, 2005 cross-motion for summary judgement in which they acknowledged the possibility of an error in Plaintiff's guidance header, which they promised to investigate in order to determine whether Plaintiff's 1976 conviction was a felony level sexual abuse charge or a misdemeanor.  *See* Dkt. No. 34.  To date, Defendants have not informed the Court of their findings.

**ORDERS** that the Clerk of the Court shall not enter judgement or close this case until the

Court has had an opportunity to review Defendants' report of their investigation.

**IT IS SO ORDERED.**

Dated: August 7, 2006
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge